## No. 10,303.

### WESTERN ASSURANCE COMPANY VS. CHARLES L. UHLHORN.

1. An objection to the introduction of *any* evidence, in support of a demand contained in an answer, on the ground that it is too vague and indefinite, cannot prevail, if it appears from kindred averments of the plaintiff's petition, that the character of the transactions are well known to both parties.

2. If the pleadings are of such character as to advise the parties of the issues respectively made, and to enable them to introduce all the evidence in their power, the purpose of the law has been effected.

3. In a suit of a principal against a contumacious agent, for a settlement of accounts, and the recovery of the balance found to be due, in which the defendant claims reimbursement for certain expenditures, the *onus probandi* is on the latter, and he must show, by a satisfactory preponderance of evidence that such disbursements were made for the account of the principal, and that same were authorized and accepted by the principal, otherwise his claim for reimbursement will be denied.

4. Although a verdict of a jury, upon a question of fact, is entitled to great weight and consideration, yet, if there is no question as to the character, or credibility of witnesses, and no question of false swearing and the like, but only a question of the *weight* and *sufficiency* of evidence, it occupies just the same place as other findings by a *court* of first instance, and like them may be revised or annulled, and for like reasons.

APPEAL from the Civil District Court for the Parish of Orleans.
    *King*, J.

*J. P. Blair* for Plaintiff and Appellant.

*John M. Baldwin* for Defendant and Appellee.

The opinion of the Court was delivered by

WATKINS, J.  This controversy is with reference to an alleged in-
debtedness of the defendant, as agent of the plaintiff company, on a
settlement and proper adjustment of accounts.  The plaintiff demands
judgment for $2441, with eight per cent interest from the 3d of March,
1888, and the defendant disavows any indebtedness whatever.  These
issues were tried and decided by a jury, who rendered a verdict in favor
of the defendant, and from the judgment based thereon, the plaintiff
has appealed.

The petition of the plaintiff states its case thus:

That it is engaged in the fire insurance business in Canada and the
United States; that L. M. Tucker, of Columbus, Mississippi, as the
general agent for its Southern department, embracing the State of
Louisiana, on or about the 1st of April, 1882, appointed the defendant
its local agent, with domicile in New Orleans, for the purpose of so-
liciting risks, of collecting premiums, and remitting same to him for the
company, and to whom he was required to make monthly reports; and
that the agreed compensation for his services was a *per centum* of com-
mission on the amount of premiums collected.

That defendant accepted said agency and acted as such until he was
discharged, and that, on final settlement, he is due the company the sum
above specified as the balance of collections received and business done,
during the months of August, September, October, November and De-
cember, 1887, and January, 1888; and that same is evidenced by an an-
nexed account.

The answer of defendant is a general denial except as to special ad-
missions.  After specially denying any indebtedness to plaintiff, the
answer proceeds as follows: " Further answering, defendant admits
that he was for some years the agent of plaintiff, but avers that he has
rendered a correct and final account of his agency, and has made a full
and complete settlement with plaintiff.  Further answering, defendant
avers that the sum of twenty-four hundred and forty-one dollars, now
claimed of him by plaintiff, *was paid by defendant in the usual course of*

*business to various insurance companies, agencies and other parties; that the money so paid was rebates or brokerages on premiums for insurances placed with plaintiff company, by said agencies and companies, and that defendant holds receipts for same.* ' Further answering, defendant avers that after said rebates and brokerages · were paid, *it was agreed and understood between plaintiff company, through its general agent, and himself that said rebates or brokerages were assumed by said company."*

Thus it is made to appear that the questions to be decided are, first, whether the defendant did pay the sum of $2441 to other insurance companies in rebates, or brokerages on premiums for insurances placed with the plaintiff, and second, whether, after same were so paid, "it was agreed and understood between plaintiff, through its general agent, and the defendant, that said rebates, or brokerages were assumed by said company."

· Practically there is no dispute as to the correctness of the plaintiff's account, in other respects.

It will be proper, at this juncture, to examine the bill of exceptions retained by the plaintiff's counsel to the admissibility of the defendant's evidence, in support of the two foregoing propositions.

· His objections were urged against all of the evidence of defendant, in support of his claims, because they are too indefinitely, and vaguely pleaded to disclose whether they are claims in compensation or reconvention, and because " the time during which these brokerages were received is not alleged in defendant's answer; * * and the plaintiff is not able to make its defense, which would grow out of time when the claim of the defendant arose."

The answer is not as clear as it ought to have been in its statement of the dates; but, when we take into consideration the quoted averments of the plaintiff's petition, the course of admitted dealings between the defendant and the plaintiff's general agent, and the given dates of their commencement and conclusion, we cannot appreciate the suggested difficulties of the plaintiff's situation. Indeed, when we bring to bear on this issue the light afforded by an examination of the record, it becomes quite apparent that this general agent was fully possessed of information in respect to the dates and character of the defendant's claims.

The answer of the defendant states his reliance upon an agreement charged to have been made with the general agent, to bind the company.

No averment is contained therein to the effect that the company was bound to make reimbursement through other instrumentality.

As to whether the claim of the defendant is a demand in compensation or reconvention, is a question which does not arise on an objection to the admissibility of evidence.

The ruling of the trial judge was correct.

Under the circumstances of this case, we think that both parties have enjoyed full opportunity of introducing all the evidence in their power, and if the pleadings give full scope to evidence, the purpose of the law has been effected.

On the merits the testimony is conflicting, and somewhat involved, but a careful examination of it has satisfied us that the verdict and judgment rendered in the court a qua are clearly erroneous.

It is an admitted fact that defendant's compensation prior to March, 1886, was controlled by a parol agreement between Capt. Tucker, general agent, and himself, and that it consisted exclusively of seventeen and one-half per cent commissions upon gross premiums earned.

It seems that there exists among insurance companies and agents, in the City of New Orleans, a custom of demanding rebates upon commissions for reinsurance; that is, when a company has a risk offered it, which, although desirable, is one considered larger than it deems safe to accept, takes the same, and places a portion of it with another as a reinsurance, and the other receives its share of the premium, less the amount it is bound to pay to the company placing it, as a brokerage.

While it is true that, during the period of time between April, 1882, (when the defendant was first appointed agent) and March, 1886—this being the time during which the parol contract referred to continued— the defendant did considerable business in such reinsurances, but his books and accounts show that he made no charge therefor against the company, and as a witness he makes no claim to that effect.

On the contrary, during the period referred to, he remitted monthly to Capt. Tucker, general agent, the total premiums collected, less his 17½ per cent commissions, and made no demand for more.

It is admitted that in March, 1886, Capt. Tucker changed the defendant's contract so as to allow him 15 per cent commissions for insurance, and 5 per cent reinsurance brokerage. This contract is in writing. It was subsequently amended, so as to allow defendant 10 per cent brokerage. All the evidence tends to show that these two alterations of the contract had exclusive reference to the *future*, and none to the *past*. Hence it is clear that such an allowance as defendant *now* demands must come from moneys *actually paid* over to the company's agent prior to March, 1886, and is in the nature of a demand for reimbursement. The defendant, while under cross-examination as a witness, admitted that

the plaintiff's account is perfectly correct, in all other particulars ; that is, if his claim for brokerages was allowed, the account would be correct.

This amount is $2441, and is the only matter of dispute.

This claim rests exclusively upon the alleged promises made by Capt. Tucker, in the course of various conversations had and held with defendant, at different dates *subsequent-* to March, 1886.

According to defendant's idea, or recollection of them, Capt. Tucker at first recognized the justice of his claim, then agreed to recommend it to the company for their allowance, then referred it to Mr. Dodd, as general superintendent of all the companies' agents, and, finally, approved it, and directed him to enter same as a credit on his account. In accordance with this view he rendered his final account and placed his claim as a credit, and paid the balance of $597 19.

Capt. Tucker's statement is, that at the time of defendant's employment, the question of reinsurance brokerages was discussed, and the defendant's compensation of 17½ per cent was intended to, and did include and cover the same; and that this arrangement was perfectly satisfactory to him, and that up to March, 1886, he acted under it, as his monthly accounts will show.

He says that he has frequently demanded payment of defendant, of the account sued on, and that he has never denied its correctness.

That the defendant never made any *claim* for reimbursement of these brokerages until December, 1887, and he, at that time, did not make any *demand* for same but expressed himself as feeling hopeful of the company's making some allowance on that score.

That the first specific demand to that effect was not made until he rendered his account in February, 1888.

He says explicitly that "there *never was* any agreement by myself, or by the company, to reimburse the defendant for brokerages paid out by him ; and, during this period of time, *there never was an intimation*, or *suggestion* from the defendant that he expected to be reimbursed."

He just as emphatically states that there never was anything "in either the written or spoken correspondence between us, other than a request that the company would allow him, as a favor, something for the hard work he had done to promote its interests ; but no amount was stated, and no definite claim was made."

In support of his recollection he cites the circumstance of his having made a demand on the defendant for payment in 1887, to which the latter replied that he was expecting to receive several thousands of dollars from certain pending real estate negotiations, which would put him on his feet financially, and that the former need feel no apprehensions.

In order to be precise, we will quote from the defendant's testimony as a witness, the following:

" Q. Before 1886, did you consider that you had any claim against the company for brokerage ?

" A. I did not.

" Q. What did you base your claim against the company upon ?

" A. I based my claim because, at the time I growled about 17½ per cent, and called the attention of Capt. Tucker, that it had cost me up to that time $2441. I wrote to him, about that time, and he confessed it, and *therefor made* the change　*　*　to fifteen and five.

" Q. I understand that you do not consider that you have a right to credit yourself with this amount of brokerage until at a certain time. Will you please state when that time was, and what took place about that time that had justified yourself in believing that you could credit yourself with these items ?

" A. Well, personal conversations with Capt. Tucker, during the month of May　*　*　1886.　*　*　I *regarded* Capt. Tucker, in these conversations, to have acknowledged the claim as a valid one, and to have allowed it. I *never could have charged it*, if he had not done so ; it would have been improper for me to have done so unless he had allowed it."

When pressed for a more direct answer, by his counsel, he said : " After writing that letter, he happened to drop in at my office, and answered it, as it were, in person, *by holding it* in abeyance until Mr. Dodd had answered, he *taking it for granted that the thing would be done at once.*　*　*　The substance of it (the conversation) was that there was no trouble at all about it, but, as a matter of business, he would get Mr. Dodd to confirm it ; that was about the substance of it, and Mr. Tucker himself was superior law, and there was no occasion to refer it to Mr. Dodd."

On his cross-examination, he says, again : " The substance of the *last* conversation was that he thought I ought *not* to charge these things. I told him that I would do it ; that he had instructed me do it, and that he had no right to recede from what he had instructed me again, and again. From what he had told me, and from what he had said ; and he refused to do it.　*　*　He then parted with me, under the most pleasant circumstances, saying its hard, but I will have to stand it."

In the further cross-examination the following transpired, viz:

" Q. At the time, was it, or not your understanding with Capt. Tucker, that he was to *refer the request to the insurance company, in order to get them to allow it ?*

" A. Yes, sir.

" Q. Was not that your understanding at the time?

" A. Yes, sir.

\*       \*   .   \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

" Q. This promise was to get the consent of the company?"

" A. Yes, sir."

The testimony of Mr. Haskell is to the same effect. He says, of a conversation he held with Capt. Tucker on the subject, " I think that the exact words were that he would endeavor to do everything that he could for Mr. Uhlhorn in regard to these brokerages; \*   \*   that he would try and use his influence with the company to get them paid."

Taking all of these statements into consideration, the defendant's claim is not made out; and the testimony of De Gruey does not help his cause. It does not relate, in our opinion, to the matter at issue. He was an agent of the Factors' and Traders' Insurance Company, and related the substance of an interview he had with Capt. Tucker, with regard to reinsurance brokerages of *ten* per cent, which *his* company was charging. This occurred in 1886. Having explained the matter to Capt. Tucker, the latter said:

" Well   \*   \*   in that case I think Charlie Uhlhorn ought not to *lose* that. I will see *that thing* is made all right   \*   \*   He has mentioned to me the fact *that he ought not to lose it, and I am going to see that he will not lose it.*"

(The italics used in this and the foregoing quotation are those of the writer).

It was about that time that defendant's brokerages were increased.

This conversation had exclusive relation to *future* brokerages, and not to those claimed in the *past* by the defendant. This is clear when we consider the fact that this witness testifies that he never heard any of the conversations between the defendant and Capt. Tucker; and there is nothing in his evidence to indicate that he had any knowledge of his claim. Indeed, it seems perfectly certain that, as this occurred in 1886, this interview antedated defendant's first demand, by about eighteen months.

The correspondence which passed between the defendant and Capt. Tucker still further confirms our view. In the former's letter of March 3d, 1888, he claims credit for $2441, for the first time; and the latter replying says, under date March 8th, 1888, viz: " We think the 'unacknowledged remittances' to which you refer, have been acknowledged by us, *except of course the claim of* $2441 for *brokerages*," etc. To

this defendant made no reply; and Capt. Tucker repeated his letter, in substance, under date of March 14, 1888, as follows, viz:

" Amount of balance due from Chas. L. Uhlhorn, agent, as
    per our books ........................................ $3,038 19
"Less the amount of his claim for brokerages *disallowed*
    by us ................................................ 2,441 00

" Leaving a balance admitted of ..................... $ 597 19 "

The defendant's theory is not confirmed by his own letters, for under date July 7th, 1886, he wrote Capt. Tucker as follows, viz:

" When Mr. Tucker was last here, of his own accord, he mentioned that he would write to the home company requesting them to reimburse me for the commission, or brokerage I had spent in conducting their business. *This would be gratifying in the extreme, and I sincerely hope every effort in that direction will be successful.* Please let me know the result of your correspondence."

Again in his letter under date February 11th, 1887, the following occurs, viz:

" Now while they are rich and prosperous, I wish, if you can, to jog them about being generous. Figuring on my books in the dull times, I find I have spent over $2400, etc."

Again in his letter, under date of February 2nd, 1888, he uses this language, viz:

"My real agency and ownership is derived from them. If you revoke it, I will cease to represent *you* and appeal to *them.* * * I now enclose you cash vouchers for $2441. It is a legitimate charge, confessed by you again and again, and must be *adjusted.* We will split wide open if it is not."

Far from showing any admitted liability of the company for this claim for brokerages, the contrary is, to our thinking, fully established by the evidence.

All the moneys which were received by the defendant for reinsurances, were, from time to time, during the period of his employment prior to March, 1886, turned in to Capt. Tucker for the company, less 17½ per cent commissions. They have been paid to the company in the regular course of dealing, by Capt. Tucker, and have been *entirely* beyond the latter's control for years. It is no longer matter appertaining to *his* employment as general agent. Concerning *this* money there are no contractual relations existing between Capt. Tucker and the plaintiff.

There is nothing in this record which convinces us of Capt. Tucker's intention to bind the plaintiff for the defendant's claim; and, if he had

entertained such intention, we are of the opinion that, *under his general authority as an agent,* he could not have done so, without their special permission.

It is altogether unnecessary for us to examine and pass upon the plaintiff's plea of prescription, in this view of the case.

We think the jury erred in finding for the defendant.

It is, therefore, ordered and decreed that the verdict of the jury and the judgment thereon pronounced, be annulled and set aside; and it is further ordered and decreed that the plaintiff and appellant do have and recover of and from the defendant and appellee the sum of twenty-four hundred and forty-one dollars, with eight per cent per annum interest from the 3rd of March, 1888, and that the defendant's and appellee's demand and counter-claim be rejected and disallowed, and that he pay all costs of both courts.