The opinion of the court was delivered by
Nicholls, C. J.
Plaintiff alleges that on the public streets of the town of Lake Charles, and at the residence of the petitioner in the said town, in the presence and hearing of a large number of persons, *1304 the defendant, maliciously and without cause, slandered and defamed petitioner’s wife, calling her by many vile names, and applying to her many vile epithets, which are set out in the petition, all of which was done by Dobberton with a malignant spirit, with the full purpose of damaging and injuring plaintiff, although defendant well knew that his declarations were wickedly false and slanderous, and that Dobberton has accordingly damaged and injured his said wife and himself. That she had always demeaned herself with modesty, virtue and chastity, and has heretofore enjoyed a good reputation and the esteem, respect and friendship of all her acquaintances and of the community, but that since the utterance of said vile and infamous slander her good name and character have been seriously damaged, and her friends and acquaintances have fallen away from and ceased to visit her, and in several instances have totally ignored her; that her spirit has been humbled and crushed, and she has suffered untold mental agony. That said cruel slander has constantly preyed upon her mind, making her nights sleepless and her days miserable. That being then and at the time of the institution of the suit in a delicate situation, her nervous system has been greatly shocked, her health injured and her life imperiled, and in consequence of said malicious acts of Dobberton they have been injured as aforesaid in the sum of ten thousand dollars.
That he himself has been injured and damaged by the defendant in the additional sum of five thousand dollars for this; that Dobberton, not content with slandering and abusing his said wife as aforesaid, upon being requested by petitioner to cease his said abuse and leave his premises, cursed and abused him, calling him by all manner of vile, vulgar and slanderous epithets too vulgar to be repeated, and, further, threatened the lives of petitioner and his wife, and in putsuance of his threats made a felonious assault upon them while peaceably at home by hurling heavy beer bottles and other deadly missiles at them, they barely escaping from his murderous assaults by hastily closing and bolting their doors. That by reason of said vile and slanderous abuse, uttered with the view of publicly defaming and injuring petitioners and bringing them into contempt and disrepute among his neighbors, in which he has been, unfortunately, too successful, and said wanton 'and malicious trespass as aforesaid, and the injury done to petitioner’s feelings and that of his said wife as aforesaid, and the loss and expenses to which he has been placed *1305 by said tortious acts of Dobberton, and to secure his just rights thereon, he has been damaged and injured in said further sum of five thousand dollars, which he should recover from judgment. He prays for judgment against defendant for damages for fifteen thousand dollars.
Defendant pleads first, the general issue to that portion of plaintiff’s demand wherein he seeks to obtain judgment for alleged libel and slander to plaintiff’s wife. For answer to that portion of plaintiff’s demand wherein he seeks to recover judgment against him for libel and slander of himself, he pleads in bar of plaintiff’s right to such recovery that plaintiff and he mutually engaged in cursing and abusing each other at the time stated; that the language attributed te him in plaintiff’s petition was preceded by language equally libelous, slanderous and defamatory on the part of plaintiff, who cursed and defamed him, applying to him many opprobrious, vulgar and indecent epithets; that at the time he was defamed, libeled and ■slandered as aforesaid, and when he used the language attributed to him to plaintiff, said declarations were without malice and were used in a moment of heat and passion, induced by the immediate preceding words of plaintiff; that both parties being equally in fault, plaintiff had no right to recover herein. He specially denies that he committed any assault or threw bottles at plaintiff. He prayed for and obtained a trial by jury. The jury rendered a verdict in favor of the defendant. After an unsuccessful attempt to obtain a new trial plaintiff appealed.
The families of the plaintiff and of the defendant occupied houses about fifteen feet apart, separated by a fence. Plaintiff’s premises were leased from the defendant. On the 29th of May, 1898, plaintiff and defendant met at some point in the business part of the town of Lake Charles, where a conversation took place between them in reference to the continued occupancy of the property by Goldberg. Plaintiff says that Dobberton, in a loud tone, charged him with not keeping the premises in a cleanly condition; that being embarrassed by this, he withdrew without using any harsh or opprobrious language. The fact here mentioned is not referred to in the pleadings, but shown by the testimony, and is only important as it was doubtless the origin of the subsequent trouble between the parties. Plaintiff ’s testimony in the case begins with the statement that on his return home he heard the defendant abusing his wife, and that he *1306 heard him apply to her an insulting and disgraceful epithet, which he mentions, telling her to get out of his house, ‘ ‘ to get out at once; ’ ’ that defendant took a bottle toward the fence and threw it into the dining-room; that in the meantime he jumped over the fence, when plaintiff’s wife closed the door; that defendant, then went from the rear of the yard, where this had occurred, to the front, cursing both plaintiff and his wife, and again repeating as to her the opprobrious terms which he had already used. That he went into the front street and there again used the same language. Plaintiff says that when defendant applied to his wife the particular expression mentioned, he, the plaintiff, said that was going too far, that he would break his neck; that he went into the room and got a revolver, but when he got back his wife held him and locked the door, so that he should not go any further.
It will be seen that Goldberg’s testimony takes up the trouble as one already commenced between plaintiff’s wife and Dobberton when he first came to a knowledge of it. He does not attempt to explain how it was or why it was that defendant came to use the language attributed to him to Mrs. Goldberg, or to say who commenced the conversation in which the insulting expressions were employed, and what was said at the commencement.
The only persons who seem to have been present at the beginning of the trouble were Goldberg and wife, Dobberton and Lizzie Smith, a colored woman employed by the Goldbergs, who was examined as a witness for the defence. Her testimony was loosely taken and does not give occurrences with any definiteness as to the time and order in which they took place.
Prom it, it would appear, however, that on Goldberg’s returning home he related to his wife the circumstances connected with the meeting of himself and Dobberton on the street, which we have spoken of, and that a conversation took place between the two in relation to that matter in which some expression not complimentary to Dobberton was made use of by Mrs. Goldberg; that Dobberton, who was standing in his own yard at the time, heard this remark and became very much angered.
A very excited, wordy altercation followed, in which Goldberg himself is not shown, in so far as the witness’ testimony goes, to have used any particular expression, though to use her expression “ all three were fussing.” She denies that Dobberton went into *1307 plaintiff’s yard, or jumped over the fence or threw any bottles. She-denies that at that time defendant used toward Mrs. Goldberg the-objectionable epithets spoken of in the petition. She says, however,, that not wishing to get involved in the trouble she left before it was over; that she heard the parties still talking, but did not hear what they said. She says that in the course of that part of the conversation which she did hear that she heard Mrs. Goldberg make a very insulting remark to Dobberton, which remark witness repeated in court. This witness on being asked whether she had not, on the-night of the disturbance, told a certain person named that defendant had applied to Mrs. Goldberg the epithets complained of, denied having done so. At a later stage of the proceedings the person referred to was produced and testified that the witness had told her on the night in question that defendant made use of one of the expressions, giving to her its corresponding word in French.
Dobberton’s version of the affair is that at the time of the quarrel he was in his back yard, when he heard a woman using very vulgar language about some Dutchman; that at first he paid no attention^ but finally he said something, though without mentioning any one’s name; what he did say we do not know, as the transcript has left out some portion of this testimony. We think it clear that he must have said something uncomplimentary, which called out a remark from Goldberg’s wife, for after making Dobberton declare that he had said something, without mentioning names, the transcript makes him here say, evidently to her, “ I ain’t talking to you,” and immediately afterward that then this lady said, “lam talking to you” (using an insulting expression toward him).
Dobberton testifies, that after this, Goldberg from across the fence commenced abusing and cursing him violently, which language he admits he returned in kind. He says that Goldberg told him if he would come across the fence he would break his neck; that he tried to get over the fence, but that his wife took hold of him and prevented; him; that he then went to the front toward the gate on the street and invited the plaintiff to come out and break his neck; that it was. this threat of plaintiff’s which made him mad. He admits using-profane language and cursing on the street, but denies that he ever cursed Mrs. Goldberg at any time there. He states that he always respected her as a lady, and denies that either on this or any other occasion did he make use of the words alleged in the petition, about her or to her.
*1308 We say here that there is nothing in the record which in the 'slightest degree would go to impugn the character of the plaintiff’s wife. The testimony of those who have known her all her life show that an attack upon it would have been thoroughly unjustifiable, and defendant so admits. The only person who testifies to defendant’s having applied to plaintiff’s wife the epithets mentioned in the petition is the plaintiff himself, and his testimony is met by that of the positive testimony of the defendant to the contrary.
If the particular expressions complained of were in fact used, they •could not have worked any damage to character, as no third person has been produced on the stand who heard them. We are unable from the record to say who commenced the war of words and who was first to blame. The whole matter seems to have been one of those quarrels constantly occurring between neighbors, to the credit of neither, from which if either or both suffer damages it is from the ■fact of the quarrel itself and not from the force and effect of the various insulting or disgraceful epithets which are hurled at each other in the course of it.
We do not think that had defendant under the circumstances of this ease made use of the expressions charged that any one hearing them as so used would have considered them other than violent expletives, utterly wrong and reprehensible, but none the less not really carrying within themselves charges of the commission of the offences which the terms themselves would have implied as having been committed had they been made coolly and deliberately. After a careful examination of this case we have come to the conclusion that at worst it would fall within the rule announced in Fulda vs. Caldwell, 9 An. 358, where it is said that the interchange of opprobrious epithets and mutual vituperation and abuse will justify a judge in approving a verdict for the defendant although the slanderous words were proved, and a verdict rendered in such a case will not be disturbed by the Supreme Court. See on this subject Arteta vs. Arteta, 15 An. 48; Young vs. Bridges, 34 An. 336; Bigner vs. Van Benthuysen, 36 An. 38.
In Johnson vs. Barrett, 36 An. 320, this court said that where persons mutually engage in bandying opprobrious epithets an action of slander is not to be encouraged for the words thus uttered. We see no reason to disturb the verdict of the jury and the judgment of the court thereon rendered. The judgment appealed from is hereby affirmed.