MONROE, J.
This is an action brought under plaintiff’s legislative charter (Act No. 21, p. 258, of 1878, Extra Sess.) for the expropriation of a right of way, running north and south, 50 feet wide, of which 30 feet is to be taken from the east side of E. % of S. E. % of N. E. % of section 25, and 20 feet from the west side of S. W. % of N. W. % of section 30, in township 6 S., range 1 W., in the parish of St. Landry; the portion sought to be expropriated amounting to 1.53 acres, and including the crossing of the right of way of the Louisiana East & West Railroad Company, 100 feet wide, which runs northeast and southwest. The subdivisions described form a single tract, of 60 acres, of unimproved land, lying immediately to the north of the town (or village) of Eunice, and were purchased 'by the defendant (land company) in February, 1906; the 20-acre piece for $800, and the 40-acre piece, plus 5 lots in Eunice, for $3,000. They were shortly afterwards laid off (on paper) into lots and streets, but were not physically changed in any way, and a plat of survey was filed with the clerk of the court. We do not, however, understand the steps taken to have operated to constitute the property an addition to the adjacent town, or as a dedication of any part of it to the public, though it appears that, subsequently, certain of the lots were sold with reference to the plat, and it is probable that, quoad its vendees, the company may be estopped to deny the dedication of the streets leading to, and by, them. From the evidence adduced, as compared with the plat mentioned, it appears that the proposed expropriation will take the required 50 feet from the east end of certain of the lots (as designated on said plat) to wit: Lots 7, 8, 9, 10, 11, 12, in block 21; lots 7, 8, and 9, and part of 10, in block 16; lots 11 and 12, in block 9; and lots 7, 8, and 9, in block 4. We are unable to find any blocks 25 and 26 on the plat, and the east end of lot 9, in block 9, appears to be included in the right of way of the defendant railway company. The commissioners appointed by the court, as provided by the statute above referred to (one, of the three, dissenting), assessed the property to be taken, and the damage to the remainder, at $2,250, and reported that plaintiff should be allowed to cross the other road (without, however, acquiring title to the property), on condition that it make the crossing at its own expense, and that it bear the expense of an “interlocking plant,” should one hereafter be required, and the judge a quo, after striking out the requirement-last mentioned and reducing the award in favor of the land company to $2,000, affirmed the report. From this judgment, plaintiff has appealed, and the defendant railway company has answered praying for the reinstatement of the interlocking requirement. There *931 is, however, no evidence in the record to show what is meant by an “interlocking plant,” or whether it would be a hindrance or an advantage to a railroad.
As to the authority of the commissioners in the premises, the act of 1878, heretofore mentioned, provides:
“That said company (plaintiff herein) is hereby authorized to cross any * * other railroad. * * * And every railroad company in the state * * * whose railroad shall be hereafter intersected by the railroad of said company or whose railroad shall hereafter intersect the railroad of said company, shall unite with it in forming such intersections and connections and in granting the facilities aforesaid; and if the said railroad companies cannot agree upon the points and manner of such crossings, intersections and connections, and the division and apportionment of the cost and expense of the same, between said companies, the same shall be ascertained and determined by commissioners, appointed by the court,” etc.
Under this law (the companies disagreeing), the points, arising in connection with the crossing of one road by another, the manner in which the crossing is to be effected, whether the expense is to be divided, and, if so, in what proportions, are matters that are to be “ascertained and determined” by the commissioners, whose functions are therefore somewhat more enlarged than those of the jury, provided for in expropriation proceeding, under the general law, who have only to assess the value of the property to be taken, and the damages (Merrick’s Rev. Civ. Code, arts. 2631, 2632; N. O. P. R. v. Murrell, 34 La. Ann. 537), and when called on by special plea to determine the necessity, vel non, for the taking. Merrick’s Rev. Oiv. Code, art. 2636; State ex rel. City v. Ellis, Judge, 113 La. 555, 37 South. 209. We are therefore of opinion that the commissioners, in the instant case, did not go beyond the authority conferred on them, and that they erred in their findings only in the matter of the “interlocking plant,” with respect to which, as we have said, there is no evidence, and as to the amount of the award. The five lots which the defendant land company acquired with the 40-acre tract are said, by one witness, to-be worth about $100 each, though defendant’s president places a much higher value on thpm. Assuming that they were worth $50 each when purchased, and deducting the-aggregate price ($250) from the total paid for the tract and lots, and the tract would appear to have cost $2,750, to which, adding $800, as the price of the 20-acre tract, and we have $3,550, as the price, in February, 1906, of the 60 acres, which, at the time that this case was tried, were in the same wholly unimproved condition as when purchased; nothing having been done to, or with reference to, them, save to have them surveyed and laid off (on paper) into lots and streets, remote from the settled part of the town. The report of the commissioners, awarding $2,250 for 1.53 acres of this land, was made in December following the purchase, and (pretermitting the question of the damages) is-based upon a valuation of $1,471.22 per acre, as against $58.33, paid for -it ten months before, being an advance of nearly 1,000 -peícent. We do not pretend to say that such an advance is impossible, and there is no doubt that, by reason of the actual and prospective construction of several railroads (including those of plaintiff and defendant), to and from Eunice, the lots in question became very much more valuable; but we do not think that the evidence justifies the conclusion that the appreciation in value was as great as the commissioners (two out of three) or our learned brother of the district court have found it to be.
There were four witnesses examined for plaintiff who value the land at from $35 to-$75 an acre, and who do not appear to think that its value has been affected by the survey and plat filed in the clerk’s office. On behalf of the land company, there were but two witnesses examined on the question of value, viz.: O. J. Sanders, who has for several-years been engaged in the real estate business- *933 in Eunice, testifies that the land is worth 400 per cent, more than when defendant bought it, and this witness also gives some testimony as to what he had heard that the land company had obtained from one Nicoll for some of its lots, and as to the value of certain other lots, as compared with those said to have been sold; but, as he does not say that he knows that any lots were sold to Nicoll, and does say that the price which he heard had been obtained represented the value, all that we get from his testimony is that the lots here in question are worth 400 per cent, more than they were on February, 1906. W. D. Haas, president of both of the defendant companies, values the lots in question at from $300 to $600 each, which amounts to, say, from $1,800 to $3,600 an acre. He says that he bought four lots, in the Bacciochi addition (which lies between the land here in question, called the “Haas Addition,” and the town) from Nicoll, for which he paid $200 each, and he also testifies that he called the attention of plaintiff’s representative to the fact that the latter had paid Nicoll at the rate of $50 per lot, for 30 feet taken from each of some 18 lots along plaintiff’s right of way, and that he (Haas) was asking no more in proportion. The act or acts of sale, between defendant and Nicoll, were not offered in evidence, nor was Nicoll called as a witness, and it may be that, in consideration of his receiving $200 each for lots which no one testifies were worth that money, he was willing to pay $250 each for lots which were better situated, but that does not show that, in either case, the real value of the property was represented in the price. As to the other matter, it appears that O. O. Duson has bound himself to the plaintiff to furnish the right of way here in question, at his own expense, and that he bought the whole of each of the lots, to which the witness refers, from Nicoll under some stress of real or supposed competition with the witness, acting for the company. After testifying that he wanted to get 30 feet off the end of each lot, and that Nicoll would not sell less than the whole, he states that he again called on Nicoll, who said to him:
“You must buy these lots now, or you can’t get them later. Twelve o’clock to-day the sale must be passed, or you can’t buy them from me. Dr. Haas will own them after 12 o’clock to-day, and will give you trouble.”
And the witness proceeds:
“I hurried up and got the money, and bought the lots, and paid him $900 for the lots.”
It therefore appears that, as the witness paid at the rate of (a little less than) $50 a lot, and as the lots measure 50x150 feet, the land was bought for something less than $300' an acre (since there are 5 101/i25 of such-lots in an acre), which is a little in excess of' 400 per cent, more than defendant paid for the 40-acre tract, a circumstance which is directly in line with the testimony given by the only witness, save its president, whom defendant called to prove value. We therefore.conclude that four times the cost of the property in February will fairly represent its-value in October, following, when this suit was filed. As to the damages, we are of opinion that there are none. The defendant land! company ceded the right of way to the defendant railway company for $1, and the- advantage to accrue from the building of the road. Savoie (from whom defendant bought part of the land) testifies that one of his reasons for selling to defendant was the promise of a railroad and a depot near by, and Haas fully corroborates him. Haas, testifies, and the unquestionable fact is, that it was the-coining of the railroads — the Rock Island, the-Colorado Southern, the Louisiana Western,, and the Louisiana East & West — that made-defendant’s land 400 per cent, more valuable-in October than in February.
It is true that some of the lots, by reason-of the proximity of the railroad^ will not be-so desirable as sites for residences, but, upon. *935 the other hand, they will be all the more desirable as business and manufacturing sites, and it is the lots that are nearest to the railroad, as we understand the testimony, that the defendant values most highly for the purposes of its present demand. We have not overlooked our own jurisprudence on the subject of the weight to be attached to the verdicts of juries in expropriation cases, and we are quite disposed to extend a very high degree of consideration to the reports of commissioners in such cases. But there must be reason in all things, and we are not permitted to close our eyes to patent errors that are brought here, under the Constitution, to be corrected, whether they be committed in expropriation cases or cases of any other kind.
It is therefore ordered and adjudged and decreed that the judgment appealed from be amended by reducing the amount awarded to the defendant the Louisiana Central Land & Improvement Company from $2,000 to $359.98, and as amended affirmed; said company to pay the costs of the appeal.