LAND, J.
Plaintiffs sued for damages for personal injuries sustained by their minor son, Clarence, while working in the lath mill of the defendant company. It is alleged that the boy, 14 years old, was sent to operate a lath trimmer, without (notice,, warning, or instructions, and without the consent or knowledge of his parents, and in attempting to perform the work assigned to him was maimed and injured to the extent of losing the thumb and first two lingers *945 of his left hand. It is further alleged that the work assigned to the boy was exceedingly hazardous and dangerous, and suitable only for persons of experience and physical strength.
The negligence charged in the petition consists in the employment of an ignorant and inexperienced boy in dangerous work, without previous warning as to the dangers and without proper instructions as to the safe performance of his duties.
The defense is that the boy was about the average of his race and age in intelligence; that the work on which he was engaged was only ordinarily hazardous, and the dangers connected therewith were patent and obvious and might have been avoided by the use of ordinary care; that the boy was familiar with the use and operation of the machine, and was instructed by defendant as to the dangers connected therewith and the means of avoiding them, and had also acquired the same information from other sources; that the injury alleged was caused by the gross negligence and failure of the boy to use ordinary care, or was the result of an ordinary hazard of the employment assumed by him.
The case was tried before the judge, and defendant has appealed from a judgment for $2,500 in favor of the plaintiffs.
The undisputed facts are: That the plaintiff’s son began work for the defendant early in January, 1908, and was at that time more than 16 years old, and continued such work, with a brief intermission, until March 14, 1908, when he was injured while working at the lath trimmer.
That the boy was working in the lath room, which contained a lath machine and a lath trimmer in close proximity to each other, and worked most of the time at the former.
That both machines were dangerous, in the sense that an operator might be injured by inattention and carelessness in the performance of his task.
That on March 14, 1908, the boy was taken from the lath machine and transferred to the trimmer by order of the foreman, and, after having trimmed successfully several bundles of laths, was injured by his left hand coming in contact with one of the saws, both of whidh were in plain view of the operator.
That, both from the nature of the wound and the admission of the boy, his left hand was cut by the left-hand saw of the trimmer, and must at the time have been on or over the left end of the bundle, instead of at the center, which was the proper place.
The disputed facts are as to the boy’s experience in the operation of the trimmer, the instructions given him, and his capacity to perform the work.
The boy testified that he had never worked the lath trimmer before, but was contradicted by the manager, foreman, assistant foreman, and by his own uncle, who had worked at the same machine.
The boy also testified that no instructions at all were given to him about the operation of the lath trimmer. In this he is contradicted by both the foreman and assistant foreman, who testified that the boy had been instructed in the beginning, and had worked at the trimmer machine a number of times, and well understood the operation of the same. The boy’s testimony shows that on the day of the accident he successfully trimmed three or more bundles of laths, and therefore must have understood the ordinary workings of the machine.
Nothing happened until he, according to his own version, put his left hand on the bundle of laths near one end and endeavored to push that end against the saw. This explanation assumes that the boy was too ignorant to foresee that the saw in its course would inevitably cut his hand. This ex *947 planation must be taken cum grano salis. The bundle of laths was in the clamp of the packing frame, which worked forward and backward on pivots. The only thing necessary to be done was to, tilt the frame forward. The fact that the bundle was practically sawed through shows that it was clamped. Wesley Orampton, the uncle of the boy, operated the same machine for weeks, and gives a very intelligent account of its workings. He testified that both ends of the bundle, when clamped, are bound to take the saw at the same time, and, if the bundle is not clamped, the laths, being loose, roll over, and the saws cannot cut them.
It is proved by several witnesses that the left end of the bundle was sawed entirely through, except one or two laths, and it follows that the clamps were holding when the boy’s hand was cut. After an examination of a cut of the lath trimmer and a consideration of the evidence in the case, we conclude that the boy carelessly put his hand on the end of the bundle at the moment when the saw cut through.
The frame worked on pivots, the bundle >f laths was, supported by the clamps, and it does not seem that the tilting of the frame would require much muscular exertion on the part of the operator, and such is .'he evidence. Other boys had operated the st. me machine, and the evidence leaves no reasonable doubt in our minds that the plaintiff’s son had also successfully operated vho same machine on previous occasions.
The boy in question was an intelligent lad in his seventeenth year, and was mentally and physically capable of performing the work of his employment. The evidence .shows that he was properly instructed and warned, and that the defendant is not responsible for the accident.
The boy was practically his own master, and with the tacit consent of his parent hired out his services to the defendant company. He was more than two years over the statutory age, and presumably was mentally and physically fit for the employment in which he was engaged.
The burden of proof is on the plaintiffs to-establish the allegations of negligence by a preponderance of the evidence. This they have failed to do, and we find that there is a clear preponderance of the evidence on the side of the defendant. On the vital issues of fact, plaintiff’s son is the only witness in their behalf, and he testified in their and his own interest. The four witnesses for the defense, who directly contradicted him on the material issues of experience and instructions, are not pecuniarily interested in the result of this suit, and as to their bias the most that can be said is that they are employes of the defendant company. These four witnesses have not been impeached. There are no disputed questions of law involved in the determination of this case, and it would serve no useful purpose to incumber this opinion with citation of authorities.
It is therefore ordered that the judgment appealed from be annulled, avoided, and reversed; and it is now ordered that plaintiff’s suit be dismissed, with costs.