(50 South. 708.)

No. 17,509.

## VON EYE v. BYRNES.

(Oct. 18, 1909. Rehearing Denied Nov. 29, 1909.)

1. EVIDENCE (§ 586*)—WEIGHT AND SUFFICIENCY—POSITIVE AND NEGATIVE.

Where the plaintiff and four unimpeached witnesses swore positively that the slanderous words were uttered by the defendant, and his denial under oath is supported by the testimony of three witnesses to the effect that they heard words used by the parties to the altercation, but did not hear the alleged slanderous words, *held,* that such evidence is negative and noncorroborative, in the absence of proof that such words could not have been uttered without having been heard by such witnesses.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2423–2435; Dec. Dig. § 586.*]

2. APPEAL AND ERROR (§ 1012*)—REVIEW— QUESTIONS OF FACT—PREPONDERANCE OF EVIDENCE.

The constitutional jurisdiction of this court over the facts imposes the correlative duty of reversing verdicts and judgments when manifestly contrary to the preponderance of the evidence, and of rendering such judgment in the case as should have been rendered in the court below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3990–3992; Dec. Dig. § 1012.*]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Mrs. A. B. Von Eye against Patrick Byrnes. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

George B. Smart, for appellant. John J. McCloskey, for appellee.

LAND, J. The plaintiff, a widow over 70 years old, sued the defendant for damages for alleged public defamation of the vilest character. Defendant pleaded the general issue.

The case was tried before the judge, who rendered judgment in favor of the defendant. The plaintiff has appealed.

The issues before us being purely of fact, we give a condensed statement of the material evidence adduced in the court below.

It appears that the defendant had for four or five years claimed that the fence of the plaintiff encroached five inches on his premises, and had notified the plaintiff to remove the same. Plaintiff failed or refused to do so, but the defendant took no legal steps to compel the removal.

On Saturday, June 22, 1907, according to the testimony of the plaintiff and her son,

the defendant came to their gate and said that he would chop the fence down if it was not removed by the Monday following. An altercation ensued.

Defendant was quarrelsome and belligerent, inviting the plaintiff's son to come out and fight. The disturbance naturally attracted the attention of the neighbors. As to the abusive language used by the plaintiff on that occasion it was confined to the inquiry, "Why don't you come like a gentleman?" or, at most, to a statement to the defendant that he was "no gentleman."

Plaintiff testified that the defendant called her a "whore" and another vile name. As to both epithets, the plaintiff's statement is directly and positively corroborated by Mrs. Moss, who lived in the next house, by Mrs. Stubbs, who lived right across the very narrow street, by Mrs. Regnier, who lived next door to Mrs. Stubbs, and by Mrs. Anderson, who lived right across the street from Mrs. Von Eye's. Several of these witnesses corroborate the plaintiff as to the language used by him on that occasion.

Defendant denies positively that he used the vile epithets mentioned by the plaintiff and her four witnesses.

The corroborative evidence in favor of the defendant may be briefly stated as follows:

Charles Hoy, who was standing in his yard about 40 feet away, did not hear the defendant make use of the vile epithets in question. He did not hear Mrs. Von Eye say anything, and the only words he heard the defendant say were:

"Send your son out. I don't want to talk to you about it."

Mrs. Von Eye, daughter-in-law of the plaintiff and not on speaking terms with her, on account of a former grievance, deposed that she lived in a house "the distance of two double cottages," and on the evening in question, when at or near her own gate, heard loud talking and "Mr. Byrnes ask Mrs. Von Eye to move the fence, and she said she wouldn't do it," and "he told her to send her son out and he would talk to him; he wouldn't talk to her." And the witness did not hear Mr. Byrnes abuse Mrs. Von Eye. As Hoy lived at the distance of one double house from Mrs. Von Eye's, and the witness lived at the distance of two double houses, she must have been twice as far away from the house of the plaintiff as Hoy was, and he heard only a portion of the altercation.

Mrs. Hoy, wife of Charles Hoy, and the sister of Mrs. Von Eye, daughter-in-law of the plaintiff, deposed that on the occasion in question she was standing inside the blinds of her husband's house, and heard Mr. Byrnes come to Mrs. Von Eye and ask her would she please move the fence, and she said, "No," she did not intend to move it, as it had been there so many years; and she told him he was no gentleman by the way he approached her, and he said:

"Old lady, I don't seem to understand you; but, if you will send your son out, I will explain matters to him."

The son did not make his appearance; and the witness did not hear Mr. Byrnes abuse Mrs. Von Eye. The witness, when asked if she did not hear all the conversation, replied:

"Yes, sir; I heard Mr. Byrnes ask about the fence, and she positively refused to move it."

This witness had a personal grievance of ancient date against the Von Eyes.

Aloys Von Eye, the youngest son of the plaintiff, lived with his mother, and on the Saturday evening in question was on a veranda about 40 feet from their front gate. On account of the heat, the young man was in his night shirt and was barefooted. He deposed that the defendant called his mother out, and said that the fence would have to be moved or he would chop it down by Monday; that the defendant invited him out to receive a spanking, and refused to come in

and talk the matter over in a reasonable manner, but continued to abuse his mother, and· insisted on having a "scrap" with him; that he heard the defendant call his mother something, but did not catch the words, but Mrs. Moss told him; and that defendant on that occasion appeared to be drunk.

On the face of the record before us, the preponderance of the evidence is clearly in favor of the plaintiff.

Her positive statement that the defendant called her the vile names mentioned is supported by the equally positive testimony of four witnesses; and the only positive testimony in favor of the defendant is his own denial that he uttered the words as charged.

Plaintiff's witnesses were not impeached.

The so-called corroborative evidence in favor of the defendant is purely negative, as it is not shown that the abusive words could not have been uttered without being heard by the witnesses for the defendant, who, at most, heard only a part of the altercation.

We do not agree with the district judge that this is a case of the "interchange of opprobrious epithets and mutual vituperation and abuse," as in Goldberg v. Dobberton, 46 La. Ann. 1303, 16 South. 192, 28 L. R. A. 721. On the contrary, the defendant was in the wrong from the beginning to the end. He went to plaintiff's premises and raised a disturbance that attracted the attention of the whole neighborhood. He threatened violence to plaintiff's son, and· wound up by calling plaintiff vile names. Plaintiff's remark that the defendant did not come like a gentleman, or act like a gentleman, was justified by his conduct on that occasion. The opprobrious epithets were all on one side.

Our appellate jurisdiction over the facts of the case compels us to reverse verdicts and judgments when they are clearly against the preponderance of the evidence.

The same jurisdiction and the mandate of the Code of Practice compel us to render such judgment as should have been· rendered below. Considering all the facts and circumstances of the case, we fix the damages in the sum of $250.

It is therefore ordered that the judgment below be reversed; and it is now ordered that the plaintiff, Mrs. A. B. Von Eye, do have and recover of the defendant, Patrick Byrnes, the sum of $250, with legal interest from the date of this decree, and costs in both courts.

PROVOSTY, J., takes no part, not having heard the· argument.