No. 9656.
Orleans Appeal.

**CELESTE CHISOLM v. L. ROPPOLO, Appellant.**

(May 11, 1925, Opinion and Decree.)
(May 22, 1925, Petition for Rehearing.)
(June 8, 1925, Rehearing Refused.)
(July 13, 1925, Decree Supreme Court Writ Denied.)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Appeal—Par. 630.**
This Court will set aside the verdict of a jury upon questions of fact when the verdict appears contrary to the evidence and manifestly erroneous.

Appeal from Civil District Court, Hon. Sam A. LeBlanc, Judge.

This is a damage suit resulting from the falling of a smoke stack.

Judgment for plaintiff. Defendant appealed.

Judgment reversed.

Frank S. Norman, attorney for plaintiff and appellee.

Meyer S. Dreifus and H. S. Levy, McLoughlin & West, attorneys for defendant and appellant.

CLAIBORNE, J. This is a damage suit resulting from the falling of a smoke stack.

The plaintiff alleged that on August 27, 1924, while she was in the back yard of her home, 2014 Fourth Street, taking in clothes from the line, she was struck by a falling smoke stack which was on the property 2715 S. Rampart Street, operated by the defendant as a bakery, and while the defendant and his employees were in the act of repairing said smoke stack; that she received severe injuries to her head, back, and right arm and was confined to her bed for four weeks suffering much pain, and was unable to circulate for two months and is still suffering and fears her injuries are permanent; that her injuries

were caused by the negligence of the defendant and his employees; she claims $50 for doctor and drug bills, $2,000 for past suffering, and $3,000 for future suffering.

The defendant admitted that he was operating the bakery No. 2715 S. Rampart Street, and that he was in the possession and control of the property and that the smoke stack was under the control of persons repairing the roof of the property occupied and operated by him, but denied all the other allegations of the petition.

There was a verdict and judgment in favor of the plaintiff for $1,050 and the defendant has appealed.

The plaintiff's case is supported by the testimony of herself and of 1st her father, George Chisolm, and of her mother, Celeste Chisolm.

The plaintiff testifies:

"I was standing in the yard in a stooping position taking up clothes. * * * A smoke stack fell into our yard and I was struck by it. * * * I heard a crash, and I found out afterwards what happened."

All three testified that the accident happened between two and three o'clock in the afternoon.

Her father testified:

"I was doing some repairs to the fence, stripping and joining together the boards when I looked up and saw the stack falling. Celeste was stooping down to the ground, like she was picking up clothes from the ground and the stack hit her and knocked her over, towards the fence, and I called my wife and said: 'Look here, Celeste is dead out here', and me and my wife picked her up and give her first aid. * * * She was knocked out, speechless."

"Q. And how long did she lie there before you picked her up?
"A. Just as quick as my wife come we picked her up and took her in the house."

Her mother testified that she was present when the accident occurred; she was in her kitchen door, she saw the stack fall; her daughter was standing in the center of the back yard, in a stooping position to pick up some clothes that fell on the grass; she heard the crash and saw the stack fall and hit the girl and knocked her unconscious; she and her husband came to the rescue and brought her inside and rendered her first aid.

After reading the testimony on behalf of defendant we come to the conclusion that he has successfully contradicted the testimony in behalf of the plaintiff, and that the preponderance of proof is absolutely and completely in favor of defendant.

The first witness for defendant is William Werling, a cabinet and screen maker and carpenter; on the date of the accident he was working for the defendant repairing the roof; he was in the yard at the time of the accident and saw the smoke stack fall.

The second witness was Clarence Brandon, manufacturer of screened doors; at the time of the accident he was working for defendant repairing his roof; he heard a noise and looked up and saw the stack going over; he hallowed: "Look out below", and went to the edge of the roof and saw the stack fall in plaintiff's yard.

The third witness was William Tank, an oven builder employed by defendant on the date of the accident to put up an oven for defendant; some one shouted "look out" and by the time he looked he saw the stack fall in the yard.

These three witnesses, entirely disinterested and worthy of belief, testify that at the time the stack fell there was no one in the yard except the plaintiff and her father, and that they were both standing near the kitchen door looking on, free from any injury; one of them testified: "I saw two people in the yard; this lady was in the yard (pointing to plaintiff) and a colored man she called father." Werling

and Brandon testify that the father said that the stack came near hitting the girl.

Tank testified:

"Q. And did you see anything in the yard at the time?
A. Yes, sir, two people.
Q. Who were they?
A. One was a man and the other was a woman, or a young girl.
Q. White or colored?
A. Colored, both of them.
Q. Would you recognize her if you saw her?
A. I think I can; I think that is the lady right there.
Q. Where?
A. Right behind you (pointing to the plaintiff."

The plaintiff and her father and mother testify that the accident happened between two and three in the evening. The three witnesses above named unanimously swear that the accident happened between eleven and twelve in the morning.

They are certain of that hour because they had not yet taken their lunch.

The defendant testified himself that he was engaged wrapping bread in his bakery when the stack fell; that he immediately hurried to the plaintiff's yard in company with the three witnesses above named and that when he got there the plaintiff and her father were standing up near the kitchen immune, and that the plaintiff's father said to him that the stack nearly fell upon his daughter.

He also testified that the accident happened between 11 and 12 in the morning. He was wrapping bread for delivery, and bread is not delivered after 3 p. m.

But assuming that the plaintiff's father did not say to the defendant that it was fortunate that the stack had not fallen upon his daughter, one thing is certain, and that is, that immediately after the fall of the stack, defendant and his three witnesses proceeded from his bakery to the plaintiff's yard and there saw the plaintiff and her father standing looking at the stack, and that neither one nor the other said that the plaintiff had been hurt, and that it was only at about 5 o'clock that the plaintiff's father went over to Rappolo's and asked him what he was going to do about the injury to his daughter.

We are aware of the jurisprudence that attaches such importance to the finding of a jury upon questions of fact, that appellate courts may not reverse their verdict unless manifestly erroneous. But this rule is not inflexible. We read in 1 H. D., p. 92, the following:

"As the Supreme Court possesses the right and is under the obligation of examining questions of fact as well as those of law, and as it is not provided with a jury, it is sometimes its duty to pronounce upon a question of fact, in direct opposition to the verdict of a jury; otherwise there might be cases in which suitors could not be relieved from erroneous decisions below. And where the Supreme Court entertains no doubt upon the evidence, which is sufficient to do justice between the parties, the case will not be remanded but be decided in direct opposition to the verdict or judgment in the Lower Court. So, where the damages assessed by the jury are excessive, they will be reduced." Quoting numerous authorities. Dalferes vs. Maurin, 49 La. Ann. 335, 21 South. 517; 1 La. Dig. §630.

In the case of Von Eye vs. Byrnes, 124 La. 769, 50 South. 708, the court said, on p. 773:

"Our appellate jurisdiction over the facts of the case compels us to reverse verdicts and judgments, when they are clearly against the preponderance of the evidence. The same jurisdiction and the mandate of the Code of Practice compel us to render such judgment as should have been rendered below." Louisiana Western R. Co. vs. Louisiana Cent. Land & I. Co., 119 La. 928, 44 South. 732; Opelousas Gulf & N. E. Ry. Co. vs. St. Landry Cotton Oil Co., 121 La. 796, 46 South. 810; Louisiana Ry. & Navigation Co. vs. Sarpy, 125 La. 388, 51 South. 433; Boon vs. O'Neal, 33 La. Ann. 1190; Johnston vs. Barrett, 36 La. Ann. 320; Western Assur. Co. vs. Uhlhorn, 41 La. Ann. 335, 6 South. 485; Griffin vs. Shreveport & A. R. Co., 41 La. Ann. 808, 6 South.

624; Hayden vs. Slaughter, 43 La. Ann. 388, 8 South. 919; Texas & P. Ry. Co. vs. Southern Development Co., 52 La. Ann. 538, 27 South. 101; 8 Orl. App. 157-346, 9 Orl App. 3, 2 N. S. 653; Sloo vs. Tarbe, 9 La. 522; Von·Eye vs. Byrnes, 124 La. 769, 50 South. 708.

The same presumption of correctness as to law and facts applies to judgments of Courts unassisted by a jury, yet these judgments are reversed daily by the Appellate Courts on questions of fact. Boon vs. O'Neal, 33 La. Ann. 1190; Western Assur. Co. vs. Uhlhorn, 41 La. Ann. 385, 6 South. 485; 1 La. Dig., par. 634.

But in this case we cannot conceive·how the jury could have believed the testimony of the plaintiff and of her father and mother, all three eminently interested witnesses, and could have disregarded the evidence of defendant flowing from the lips of disinterested witnesses. There could have been but one conclusion and that was that the legal preponderance of testimony was with the defendant; Cofield vs. Black Lake Lumber Co., 123 La. 944, 49 South. 650; De St. Romes vs. Carondelet Canal & Navigation Co., 24 La. Ann. 332; Lykiardopoulo vs. New Orleans & C. R., Light & Power Co., 127 La. 316, 53 South. 575; Brown vs. Green, 132 La. 1089, 62 South. 154.

The jury was perhaps influenced by the Judge's charge to the following effect:

"If a witness is absent whose testimony might be considered as having an important bearing on the case, unless his absence is explained to your satisfaction, the law creates a presumption that that witness would have sworn unfavorably to that party his testimony might be considered relating to. If proper explanation has been made on the witness stand of such absence then you are to disregard that presumption."

It seems that the defendant at the suggestion of plaintiff's father that his daughter had been injured by the falling stack had sent Dr. Watson to call on the plaintiff. The doctor called upon her but made no examination; merely stated that he would consult with Dr. Brazier who was treating her. On the trial of the case the defendant did not summon Dr. Watson. He called upon him in the morning to request his presence in court, when he was informed that the Doctor was absent from the city.

The plaintiff in his argument invoked the rule applied by the Judge. But while under peculiar circumstances the rule is good law, it has no application here. The worst that could have been said was that the Doctor saw the plaintiff sick in bed, suffering from all the ailments she complained of. But Dr. Brazier had already testified to these and they play no part in this opinion. Dr. Watson knew nothing of the fall of the stack nor that it had fallen upon plaintiff, and therefore there was nothing which the defendant could have concealed by the Doctor's absence.

It is therefore ordered that the judgment herein be reversed and set aside and that there now be judgment in favor of defendant rejecting plaintiff's demand at her cost in both courts.