## FRANKLIN v. NEW ORLEANS PUBLIC SERVICE, Inc.*

No. 17081.

Court of Appeal of Louisiana. Orleans.

March 13, 1939.

*Rehearing denied March 27, 1939; writ of certiorari denied by Supreme Court May 1, 1939.

Habans & Coleman, of New Orleans, for appellant.

Alvin R. Christovich, of New Orleans, for appellee.

JANVIER, Judge.

Louise Franklin alleges that, as she was alighting from a motorbus of defendant, New Orleans Public Service, Inc., in which she had been a passenger, the driver of the said bus, without looking to ascertain whether she had safely alighted, attempted to start it, and that the resulting sudden jolt caused her to be thrown "off her bal-ance" and to fall violently to the ground with consequent serious injuries.

Though defendant, for lack of sufficient information, denied that petitioner had been a passenger in the bus, it did not seriously attempt to sustain this defense, but based its contention that it was not responsible on its averments that the bus had not been prematurely started, had not jolted or otherwise moved; that it was comparatively new and was equipped with the latest modern safety appliances, which, when either of its doors was open, prevented it from moving forward or backward, or jolt sufficiently to cause injury to a person embarking or alighting. It especially maintained that the cause of petitioner's fall, if she did fall, was her own negligence in slipping as she stepped from the bus to the ground, or just after she had descended.

In the district court there was judgment for defendant and plaintiff has appealed.

The record shows that plaintiff had been a passenger in the bus on the day alleged—March 19, 1937, and that, as she attempted to alight when it came to a stop at the corner of North Claiborne and Urusline Avenues, in some manner she fell and sustained injuries.

There are certain legal controversies concerning the charge to the jury, the failure of the judge to exclude certain testimony, and his further failure to require the jury to inspect the bus. We shall refer to these later, first considering the principal issue, which is one of fact: Whether the bus was started prematurely, or was otherwise jolted before plaintiff had alighted, or whether she fell as the result of her own carelessness.

Plaintiff, in addition to herself, produced four witnesses, who were seated in the rear of the bus and who claimed to have witnessed the fall. Each of them stated that the bus had either jolted or started prematurely.

Warena Martin said that, as plaintiff was alighting, the bus moved forward a short distance. She selected an object in the court room as being as far from her as the distance the bus traveled. This object was shown to have been 8 feet from her. It is well, however, to note that plaintiff herself, in her petition, did not charge that the bus had actually moved forward, but alleged merely "that there had been a sudden jolt", and also that, in her testi-

mony she did not state that the bus had moved forward, but limited her charge to the statement that "the bus jolted". She later said that it "vibrated", or shook. This witness, then—Warena Martin—obviously went a great deal further than plaintiff herself in describing the movement of the bus.

Elyria Broussard, another witness who testified on behalf of plaintiff, said that the bus moved about 5 feet, but that, as a matter of fact, she did not know what caused plaintiff to fall because she had alighted first and was walking away from the bus with her back to the plaintiff.

Inez Flowers, a third witness produced by plaintiff, knew nothing of the accident until she heard someone scream. She said that then she and others called out and the driver stopped the bus, but she readily admitted that she was not certain that the bus had started at all and that, probably, her own excitement had resulted from fear that the bus might start and run over plaintiff, who was on the ground. She said very definitely that she was not certain that the bus had moved at all:

"Q. Wouldn't it be possible you simply got excited and were afraid the bus might move off? A. That is exactly why I would not say the bus started, because I remember I was excited by me hearing the cry of distress.

 * * * * * *

"Q. Coming back to the original question, you would not swear that the bus did start? A. No, that is what I said in the beginning. I couldn't swear the bus had started."

The fourth of plaintiff's witnesses, Loretta Miles, said that the bus moved about two feet, but admitted that this was only after plaintiff had already fallen to the ground, and she admitted that the bus had not started when she heard the scream:

"Q. The bus hadn't started before you heard the hollering, had it? A. No, sir."

On the other hand, many witnesses stated positively that the bus had not jolted, or otherwise moved. Both Mr. and Mrs. Ray Johnson were passengers. Mr. Johnson testified that "the bus was standing perfectly still". Mrs. Johnson said, "I am positive it did not move". The testimony of these witnesses is attacked because of the fact that they received their expenses from the defendant corporation and voluntarily came down from Baton Rouge to testify. We do not see that this, without any other evidence to impeach them, should disqualify them as witnesses, or should render it necessary that we should look with suspicion upon their statements.

Mrs. John A. Terry, also a passenger, said that the bus stopped to allow passengers to alight and that it did not jolt or start, but that, just as it seemed about time for it to start, someone called out, "Don't move the bus".

From this it appears that, as plaintiff fell in attempting to alight, or just after she had stepped to the ground, the person who called out did so for fear that the bus might start and run over her.

Mrs. H. A. Sauviac was seated with her sister, Mrs. Terry. She corroborated entirely Mrs. Terry's testimony as to the call, "don't move the bus", and she stated that, when the bus was brought to a stop for plaintiff to alight "it did not move any more after it stopped".

Miss Mildred Erard, who was seated near the front of the bus, said that it "did not move at all". She was asked: "Did you feel any jerk or jolt just before this person hollered, 'wait a minute'?" She answered: "No, sir, no, I did not."

Miss Helen Pardue, also a passenger, said that she saw both Mrs. Terry and Mrs. Sauviac and another young lady—probably Miss Erard—on the bus; that she remembers that the bus stopped for the plaintiff to alight and that, after it stopped, it did not move until after plaintiff had been injured. She was asked whether it had moved at all and her answer was, "absolutely not; the bus never moved at any time". She stated further, most positively, that at the time of the screaming which indicated that plaintiff had fallen, the front doors of the bus were still open in order to permit the entry of a prospective passenger. We comment on this because of the testimony, to which we shall later refer, which shows that the bus was equipped with safety devices which made it impossible to move either forward or backward when either door was open.

The evidence shows very convincingly that, after plaintiff had fallen, she was directly opposite the door through which she had descended to the ground, and that, therefore, it is inconceivable that the bus actually moved forward at all.

But plaintiff maintains that, even though the bus may not have moved forward, it jolted as she placed her foot upon the step and that this jolt caused her to lose her balance. The bus itself was very carefully examined by an engineer, who was placed upon the stand by plaintiff, and this witness said that a careful examination of the bus indicated that, if the safety devices were in working condition, it would not jolt or jar when the clutch was "let in" if the doors were open, unless the clutch was "let in" suddenly and violently. He stated most positively that, if the operator of the bus engaged the clutch gradually, and as he would have done in making a regular service start, the said bus "didn't jolt at all". It is difficult to believe that the operator of such a bus, in making the usual service start, would have allowed the clutch to become engaged suddenly and violently, as would have been necessary even according to the testimony of plaintiff's engineer to cause such a jolt.

But, as against this testimony that such a jolt would be caused by the sudden and violent engaging of the clutch, the record otherwise shows that the only jolt which would result would be a slight quivering resulting from "spring flexure". The record otherwise shows also that the bus was comparatively new, that it was in perfect operating condition, and that there was nothing whatever the matter with the safety devices and that these devices made it impossible to move either backward or forward when either of the doors was open.

■ Under all the circumstances shown, it is obviously impossible that we, on this question of fact—whether the bus started or jolted—reach a conclusion different from that of our brother below, and we, therefore, find, as a matter of fact, that the bus did not move and did not jolt sufficiently to cause a reasonably careful person to lose balance or to fall.

■ Counsel for plaintiff contends that the trial judge erred in not ordering the jury to examine the bus itself. Counsel for the defendant had stated that the bus in question was near the courthouse and that it was available if the jurors cared to examine it. It appears that the jurors stated that they did not care to examine the bus and thereupon the district judge stated that he would not order them to do so. We find no error in the judge's action in this regard. If the jury, from the evidence, felt convinced that the bus had not jolted, it was obviously within their province to determine whether they cared to examine the bus itself.

■ Counsel also contends that the court erred in not giving to the jury a full charge concerning the law involved in passenger and carrier cases. We do find the following in the judge's charge to the jury: "This is a suit against a common carrier by a passenger, and I charge you that a carrier of passengers for hire is bound under the law to exercise the strictest diligence and care in receiving a passenger, conveying him to his destination and setting him down safely; and for the safety of their passengers, carriers of passengers for hire are required to exercise the highest degree of care reasonably to be expected from human vigilance and foresight. However, a carrier of passengers is not an insurer, and it is not necessary for a carrier to show how or why a passenger was injured, to bar recovery, if it shows it was free from any negligence which might have caused the injury to the passenger."

This statement sufficiently placed before the jury the legal obligation of a carrier of passengers. But, even if it did not sufficiently set forth such obligation, it appears that no objection to the charge was made and no special charges were requested on behalf of plaintiff.

■ Counsel further objects that certain questions propounded by counsel for defendant were leading and they point, as illustrative, to the following: "Q. From the time that it stopped, and from the time that you heard someone say: 'Don't move the bus', did the bus move forward any?"

We see nothing leading about this particular question; it does not suggest the answer either "yes" or "no". The same may be said of the other questions to which counsel point.

■ Objection is also made that the trial judge restricted cross-examination of counsel for plaintiff. We have carefully read the evidence and are of the opinion that the judge acted properly in restricting the cross-examination to testimony relevant to the issues presented by the pleadings.

Counsel for plaintiff further maintains that we should give considerably more weight to the testimony adduced on behalf of plaintiff because it is—so he states—

positive, whereas that on behalf of defendant is said by him to be negative in character.

 It is quite true that more weight should be given to affirmative testimony,— where one witness, for instance, says that he saw something and another says that he did not see it, great weight should be given to the affirmative statement of the first. But here the witnesses on behalf of plaintiff state that the bus moved and the witnesses on behalf of defendant state that it did not move. We do not see that the testimony on behalf of defendant is negative merely because its witnesses deny that something happened. At any rate, the members of the jury, having seen and heard all of the witnesses, were better qualified than are we to decide just where credence should be placed.

All in all, we find no fault whatever with the action of the trial court and conclude, further, that the result reached by the jury and apparently approved by our brother below was manifestly correct.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.