77 So.2d 74 (1954)
Alexis ROMERO
v.
Lee H. HOGUE et al.
No. 3924.
Court of Appeal of Louisiana, First Circuit.
December 10, 1954.
*76 Landry, Watkins, Cousin & Landry, New Iberia, for appellant.
Provost & Ernest and Eugene D. Broussard, New Iberia, for appellee.
ELLIS, Judge.
This is a suit seeking damages for injuries suffered by the plaintiff as a result of an automobile accident involving his own car and another owned and operated by one of the defendants, Lee Hogue. The petition alleges the accident and resulting injuries were occasioned solely by the negligence of Hogue. Further, that Hogue at the time of the accident was acting within the course and scope of his employment by Hassie Hunt Trust, a Trust organized under the laws of the State of Texas, but doing business in the State of Louisiana. The public liability insurer of Hassie Hunt Trust was joined as a party defendant. The amount of damages sought was $30,217.99. Separate answers were filed upon behalf of Hogue and upon behalf of his employer and its insurer, denying any negligence whatsoever on the part of Hogue, and pleading alternatively, contributory negligence of the plaintiff. Also, the answer of Hassie Hunt Trust and its insurer denied any liability on the ground that Hogue was not, at the time of the accident, acting within the course and scope of his employment.
The Lower Court awarded judgment in solido, against all of the defendants, in favor of plaintiff, in the amount of $14,717, plus legal interest from judicial demand until paid, together with all costs. This judgment was rendered on March 9, 1954 but was not signed until May 26, 1954. An extract from the minutes of Court, March 9, 1954, shows the decree of the trial Court to contain a reservation to file written reasons for judgment. On March 22, 1954, motion was filed upon behalf of plaintiff requesting the District Judge to give in writing a finding of facts and reasons for judgment as provided by Article 7, Section 43 of the Constitution of the State of Louisiana, 1921. This motion provided that the trial Court take judicial cognizance of the law and agree to furnish in writing the finding of facts and reasons for judgment before a formal judgment be read and signed. The District Court signed this order but, notwithstanding, a formal judgment was read and signed May 26, 1954.
This recites:
"Further, the Court reserves the right to file and shall file written reasons for the judgment herein."
From this judgment Hassie Hunt Trust and its insurer have appealed.
The appellee has filed a motion to dismiss the appeal on the grounds that the transcript is incomplete in that it fails to contain the written reasons for judgment and further, that Lee Hogue, one of the defendants against whom judgment was rendered in solido, has not appealed and has not been made a party to the appeal although being a necessary one. In the alternative a remand is sought to permit appellants to secure written reasons for judgment and the joinder of Hogue as a necessary party.
With full reservation of the motion to dismiss, the appellee filed an answer to the appeal praying that the award in the judgment appealed from be amended by increasing the amount awarded to the amount prayed for, and as amended, be affirmed.

On Motion to Dismiss.

(1)
Article 7, Section 43 of the Constitution of Louisiana, 1921, in the last paragraph thereof, provides:

*77 "All district judges, in contested civil, other than jury cases, wherein there is a right of appeal, when requested by either party, shall give in writing a finding of facts and reasons for judgment."
The appellee contends that the trial Court's reasons for judgment are a necessary part of the record and he is entitled to have them included for consideration on appeal. In support of this argument there is cited the case of Brannon v. Zurich General Accident & Liability Ins. Co., La. App., 56 So.2d 287, 288, wherein it is stated, "The reasons for judgment are a necessary part of the record." Also, therein, is found:
"When written reasons are given for judgment, no matter whether pursuant to request or not, they come up with the judgment for review. Pitre v. Guidry, La.App., 147 So. 767. While the requirement seems to be that the reasons should be filed at the time of the rendition of the judgment, it matters not if they are subsequently given. Abood v. Louisiana Oil Refining Corp., La.App., 155 So. 484. Written reasons of the trial court can be of material assistance to the reviewing court, and it has been held that certiorari may even be granted ordering the reasons for judgment incorporated in the transcript, notwithstanding that they were handed down after the appeal was perfected. Bates v. Hayden, La.App., 188 So. 170."
The Bates case, cited in the above quotation from the Brannon case, granted a writ of certiorari ordering the Clerk of the Lower Court to complete the transcript of appeal by filing a certified copy of written reasons for judgment. The written reasons for judgment were rendered after the appeal had been perfected. Thus, the Bates case differs from the present case in that written reasons for judgment have never been rendered. In the Bates case the Appeal Court stated that it had no doubt that the written reasons of the trial Court would be of material assistance in considering the facts involved on the merits, and further, that no useful purpose would be served to refuse to order the written reasons placed in the transcript since
"We would in all probability remand the matter to the end that it might be reopened below and the trial court afforded an opportunity to render the written reasons which are now available." [188 So. 172.]
It would seem, that under the mandatory provisions of the Constitution, quoted above, the written reasons for judgment of the trial Court should have been prepared and included in the record. Our learned brother below evidenced, in the formal judgment, his reservation and determination to file these. He could still do so, and if they were filed, even now, we would order the Clerk of the District Court to include these in the record. However, the written reasons for judgment have never been filed, and from an examination of the record, we do not believe them necessary for a determination of this appeal. Also, the appellee could have availed himself of the legal remedies provided since the transcript of appeal has been lodged here. This is a question which could have been properly considered upon an application for writs of mandamus and, in this connection, the language used in Industrial Loan & Inv. Co. v. Price, La.App., 31 So. 2d 881, at page 883, is pertinent. It follows:
"Indirectly the question is presented as to whether or not the judge of the lower court was guilty of an abuse of discretion or of failure to perform a mandatory duty by not signing the order for a judgment pro confesso at the time the original motion praying for such judgment was presented. In our opinion this is a question that could have been properly resolved only upon consideration of an application for writs of mandamus, under the provisions of Article 838 of the Code of Practice. On appeal we must concern ourselves in so far as orders and decrees of the lower court are concerned, only with what has been done, and not what could or perhaps should have been done, by a judge of a lower *78 court with regard to performing or refusing to perform certain functions of his office."
The absence of the written reasons is due to no fault of the appellants, and the ground urged is not cause to dismiss the appeal.

(2)
The second reason upon which the motion to dismiss is founded is the failure to make Hogue, one of the defendants, a party to the appeal. However, Hogue has filed an appearance in this Court whereby he takes cognizance of this appeal, accepts service of a copy of the petition and order of appeal, and further, waives expressly, citation and all legal rights, submitting to the jurisdiction of this Court, and agreeing to accept whatever judgment is finally rendered herein.
For the reasons assigned, the motion to dismiss is overruled.

On the Merits.
There are no written findings of facts and reasons for judgment, but insofar as the judgment below operates against the employer, Hassie Hunt Trust, and its insurer, Hartford Accident and Indemnity Co., it can be safely presumed the judgment was founded upon the doctrine of respondeat superior. The appeal taken by Hassie Hunt Trust and its insurer attacked the correctness of the judgment below, maintaining this doctrine under the circumstances, was incorrectly applied.
There is a stipulation in the record to the effect that should the Court find that Hogue was an employee of Hassie Hunt Trust and that the accident arose out of and in the course of his employment, that the insurance policy issued by the defendant insurer to Hassie Hunt Trust should apply to the Hogue automobile.
Hassie Hunt Trust had, before the date of the accident, been engaged in drilling oil wells at Cankton, La., which is some 12 or 14 miles from Opelousas, La. Hogue, the employee defendant, had been working as a "rough neck" for Hassie Hunt Trust with a drilling crew at Cankton. A well at this latter place had been completed and consequently the rig was dismantled and the drilling crew was engaged in cleaning the equipment which was to be taken to another location. Part of the equipment, a mud pump, was sent to a machine shop in New Iberia, La., in order that repairs might be made thereon. Hogue and his immediate superior were ordered and directed to supervise the repairs on this particular piece of equipment, and they were directed to work at New Iberia on this job until it was completed. While Hogue and his superior had been working at Cankton, both resided in Opelousas. Some other members of the crew resided in Abbeville. Although not required, nor used in their work, automobiles were owned personally by both Hogue and his superior, and by agreement between them, they took turns using their automobiles to transport them to New Iberia. Both were traveling in Hogue's car, returning from work in New Iberia, en route to Opelousas, when the accident occurred.
Plaintiff contends that the trips taken to New Iberia to repair his employer's equipment, as well as the work itself, were done upon the order of his employer and were out of the ordinary, unusual and not customarily made or done by this employee in the performance of his normal duties; that the trips and the duties performed were made in order to facilitate the operation of the employer's machinery and in an effort to return the equipment to operation as soon as was possible, consequently Hogue at the time of the accident was in the course and scope of his employment.
On the other hand, Hassie Hunt Trust and its insurer contend neither is liable since the employee, Hogue, while returning home from his place of employment was not in the course and scope of his employment as the interests of his employer were not being served at the time and place of the accident; that his employer exercised no control over the means of transportation used at the time and place of the accident; that the use of the automobile at the time *79 and place of the accident was not indispensable in the conduct of the employer's business, nor did its use make it possible for Hogue to arrive more quickly at the site of his employment.
In Louisiana the doctrine of respondeat superior is expressed in the LSA-Civil Code.
"Art. 2317. We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."
"Art. 2320. Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed. * * *"
The language "in the exercise of the functions in which they are employed" is the Codal expression of the usual phrase "in the course and scope of the employment." This is evident from the jurisprudence, and a discussion of the liability of a master or employer in such a case as the one before us is found in Gallaher v. Ricketts, La.App., 191 So. 713, 715:
"It is well settled that, as a general rule, an employee, in going to and from his place of employment, is not considered as acting within the scope of his employment to such an extent as to render his employer liable to third persons for his negligent acts. We considered this question thoroughly in Cado v. Many, [La.App.] 180 So. 185, and reached the conclusion that it is only where the trip to or from work is required by the master to be made in an automobile, or other vehicle furnished, or where the use of the vehicle may be regarded as for the owner's purposes, as where it makes it possible for the employee to arrive more quickly at the place of business, that the master, under those special circumstances, may be liable. * * *"
This rule, as stated, in tort actions as opposed to a liberal construction in workmen's compensation cases, has been given a strict application, as evidenced in the last quoted case by the Court's use of the language following:
"* * * But in actions ex delicto for personal injuries and damages the courts apparently have adopted a strict interpretation and construction of the rule of respondeat superior. * * *"
Our jurisprudence has established certain well-defined rules in such cases as this, and a summary of them is found in Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Editon, Volume 5. These rules state:
page 123, Sec. 3004"In general, it may be said that a master is liable for the acts of his servant done within the express or implied scope of his employment."
page 129, Sec. 3005"The test, therefore, for determining whether the owner of an automobile is liable to strangers for the wrongful and negligent acts or omissions of his servant in operating the machine is whether the servant, at the time of the accident, was engaged in furtherance of the master's business or enterprise concerning which he was employed and acting within the scope of his employment."
page 130, Sec. 3006"No hard and fast rule can be laid down by which it would be possible to determine in every instance whether the driver of a motor vehicle, in the general employ of another, was acting within the scope of his employment at a given time, but rather each case is to be decided largely upon its own facts, merely keeping in mind the basic idea that the use of the vehicle at the time must have been in the service of the employer or while about his business." *80 page 133, Sec. 3009"Although the master has not given direct orders that the servant should use an automobile in the performance of his duties, the duties to be performed may be such as to require the use of an automobile, thereby rendering the master liable for negligent acts of the servant."
page 172, Sec. 3028"The master is not liable for injuries caused by the negligence of the servant in the operation of the master's automobile or that of the servant, for purposes of the servant, after business hours or while the servant is acting on his own time."
page 196, Sec. 3041"In the absence of special and peculiar facts and circumstances affecting the relationship of the parties and the purposes to be served, as a general proposition, the servant, in going to and from his work in an automobile, acts only for his own purposes and not for those of his employer, and consequently, the employer is not to be held liable for an injury occasioned while the automobile was being so used."
Our jurisprudence is in accord with the above principles and evidences that the factual situation governs each case.
In Cado v. Many, La.App., 180 So. 185, a delivery boy was riding a bicycle belonging to his employer while on his way home to lunch. The bicycle struck and injured a small child. That case held that an employee operating a vehicle belonging to his employer on his way home is considered in the course and scope of his employment only where there is some distinguishing fact, as where the trip is made for the service of the employer, or where the master furnished the vehicle in order that the employee may more quickly return to work.
In Whittington v. Western Union Tel. Co., La.App., 1 So.2d 327, 328, a messenger boy struck and injured a pedestrian while riding a bicycle during his lunch hour. The Court stated:
"It is the settled law of this state that the master is liable for the damage occasioned by the torts of the servant only when committed while he is acting within the scope and course of the employment. * * * And, as a general rule, there is no responsibility on the part of the master for injuries caused by the servant while going to and from his place of employment, including trips for his meals, unless there are circumstances disclosing that the interests of the master were at the time being served."
The Gallaher case cited above involved an accident where a newspaper carrier was required to attend meetings held, from time to time, at the office of the publisher. He used his own automobile in delivering papers and the Publishing Company allowed him a certain sum each week to help defray the costs of operating the car. The accident occurred while he was returning to his home from one of these meetings. The Court pointed out, that although the Company paid a fixed amount to be used in defraying the expenses of the automobile, it was not, at the time of the accident, being used in the delivery of papers and consequently was not being used in and about the employer's business at the time. It was concluded that there were no facts to indicate that the defendant had or exercised any control whatsoever either over the employee or over the car at the time of the accident.
In Duffy v. Hickey, 151 La. 274, 91 So. 733, the employer was held liable for the negligence in the operation of an automobile by an employee, where, under the particular circumstances, the vehicle was being used in order to enable the employee to reach his employer's place of business more quickly.
In Hardware Mutual Casualty Co. v. Standard Coffee Co., La.App., 2 So.2d 89, the employer was not held liable as it had no control over the means by which the employee traveled from place to place, and it was not shown that the use of the automobile *81 was indispensable in the conduct of the employer's business.
McAllister v. Jackson Brewing Co., La. App., 6 So.2d 179, held an employer liable upon the basis that the employee was required to use his own car in Company business and that the accident occurred while he was on his way to a sales meeting which he had been ordered to attend. Therein, the Standard Coffee Co. case was distinguished, and the doctrine of respondeat superior applied since the employer exercised control over the means of transportation, coupled with the fact that the employee had been ordered to attend the meeting.
In the present case, the record is clear that Hassie Hunt Trust maintained no control whatsoever over the method of transportation used by its employees and at the time of the accident did not have any control over the employee, Hogue, or his automobile. Hogue was not paid any operating expenses for his automobile nor was he given any traveling expenses to defray the cost of going to and from his work. The employer here did not designate where Hogue should live, nor did it designate the method of transportation to and from his work. Neither is it shown that the automobile was required in the pursuit of the employee's duties. It is shown, merely, that Hogue lived in Opelousas from his own choice. He could have reached his place of employment by any method he chose, or he could have stayed in New Iberia until the job was completed.
We do not find anything in the record to show that Hassie Hunt Trust, the employer, exercised any control over the means of transportation or that the use of the employee's automobile was indispensable in the conduct of the employer's business, nor that it benefitted it in any way. Consequently, Hogue cannot be said to have been within the course and scope of his employment at the time of the accident.
The trial Court evidently based the judgment against Hogue upon the conclusion the accident happened solely through his negligence and that the plaintiff was guilty of no negligence whatsoever.
Since Hogue, one of the original defendants, has failed to appeal or to answer the appeal taken, he admits the correctness of the judgment insofar as he is concerned, and the decision of the trial Court is therefore binding upon him.
The plaintiff, Romero, has answered the appeal of Hassie Hunt Trust and its insurer seeking an increase in the amount awarded by the trial Court, $14,717, to the amount prayed for.
In view of the fact that no appeal was taken by Hogue nor by the plaintiff, the judgment cannot be disturbed as to Hogue and it is therefore unnecessary to discuss the quantum or the basis therefor.
For the reasons hereinabove the judgment of the lower Court is reversed insofar as it affects Hassie Hunt Trust and its insurer, Hartford Accident and Indemnity Co., and affirmed insofar as it affects the defendant, Lee H. Hogue. The cost of the appeal is to be borne by the appellee and all other costs by the defendant Hogue.