William N. BURNS and Liberty Universal
Insurance Company, Appellants,

v.

TRAVELERS INSURANCE COMPANY
and Michigan Mutual Liability
Company, Appellees.

No. 21160.

United States Court of Appeals
Fifth Circuit.

April 7, 1965.

Breard Snellings, Curtis R. Boisfontaine, New Orleans, La., for appellants.

Henry B. Alsobrook, Jr., Adams & Reese, W. Ford Reese, Thomas J. Wyllie, New Orleans, La., for appellee Michigan Mut. Liability Co.

John V. Baus, John J. Weigel, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for appellee Travelers Ins. Co.

Before WISDOM and GEWIN, Circuit Judges, and BOOTLE, District Judge.

BOOTLE, District Judge:

This is a suit to recover for personal injuries and is founded in simple negligence, not malpractice.[1] The appellants William N. Burns and Liberty Universal Insurance Company, his employer's subrogated workmen's compensation carrier, brought this action against Michigan Mutual Liability Insurance Company and Travelers Insurance Company (appellees), the liability insurers of Hotel Dieu Hospital and Dr. John Nabos, respectively. After a jury verdict finding no liability on the part of either appellee, the appellants moved for a new trial, which motion was denied. From final judgment this appeal was prosecuted.

The parties are in accord as to the facts with the exception of certain instances which will be noted.

The appellant (William N. Burns) was in New Orleans to attend a sales meeting for his employer. While Mr. Burns was seated on a bed in his room at the Roosevelt Hotel one of his friends told a funny story and Mr. Burns' response caused him to fall backwards from the bed sustaining a subluxation fracture involving two of his cervical vertebrae. On the following day Mr. Burns was admitted to Hotel Dieu Hospital and referred to Dr. John Nabos, an orthopedic surgeon, for further treatment. Dr. Nabos placed Mr. Burns in head-halter traction where he remained for six days. After the sixth day Dr.

---

1. Counsel for both sides stipulated that there was no issue of malpractice in this case by either Dr. Nabos or the hospital, that the orthopedic treatment given to the plaintiff Mr. Burns was reasonable and proper and that the sole issue in the case from the liability standpoint was whether or not Mr. Burns sustained an accidental injury as the result of negligence by either Dr. Nabos or the employees of the hospital on September 14, 1961, while a patient in the hospital.

Nabos decided to employ a different type of traction through the use of Crutchfield Tongs. This decision was prompted because the head-halter traction was not achieving the desired reduction of the cervical fractures and also because Mr. Burns complained of the discomfort caused him by the head-halter. The bedside surgery performed by Dr. Nabos, in order to affix the Tongs, necessitated the changing of the linen on Mr. Burns' bed. At this point the parties are in dispute as to exactly what happened. It is the contention of the appellants that during the linen change Mr. Burns was *dropped* or *flipped*, impinging his spinal cord and leaving him paralyzed thereafter from the neck down. The appellees assert that he was at no time *dropped* or *flipped* or in any manner roughly treated either during the operation or the linen change. The appellees also contend that the paralysis was not immediate but was complete only some 20 to 30 minutes following the linen change. There was also a factual dispute as to whether Mr. Burns stated to his wife and sister immediately after the paralysis was complete, and in front of Dr. Nabos, in effect that he had been flipped over injuring his neck.

Following the above events Mr. Burns remained in Hotel Dieu Hospital for six or seven weeks after which he was transferred to his home in Fort Worth, Texas. The Hotel Dieu Hospital received no complaint of rough treatment until the approximate time this action was filed some eight months after the alleged injuries.

Appellants have specified eight errors which they allege were committed during the trial of their case. These specifications are discussed in the order in which they appear in appellants' brief.

■ The records of the Hotel Dieu Hospital revealed an operative note made by Dr. Nabos following the placement of the Crutchfield Tongs. This note contained a detailed résumé of the surgical procedure employed and included a notation and description of the linen change, which description, the appellants contend, must have been prompted by some com-

pelling reason on the part of Dr. Nabos. It was the intent of the appellants to let the jurors view a typewritten copy of this note while Dr. Nabos was being cross-examined so that they could better grasp the significance of the evidence. The trial court would not permit this to be done and his ruling is assigned as error. The specific complaint of the appellants is that the efficacy of their cross-examination was impaired. There is no valid contention that properly admitted evidence was kept from the jury. It is fundamental that control of cross-examination rests in the discretion of the trial court and will be disturbed only when abused. Roberson v. United States, 249 F.2d 737 (5th Cir. 1957), cert. denied, 356 U.S. 919, 78 S.Ct. 704, 2 L.Ed.2d 715 (1958); Alderman v. United States, 31 F.2d 499 (5th Cir. 1929). The lack of abuse is obvious here, especially since the items offered for the jurors' observation were not properly in evidence but were mere *typewritten* copies of an original which was in evidence. Furthermore, there can be little doubt that the jurors were fully aware of the substance of the operative note since the record shows that it was read to them on several different occasions during the trial and was available to them as a properly admitted exhibit.

■ Appellants next assign as error several portions of the charge to the jury. Assignments number 2, 3, 4 and 5 are in a similar vein and may be dealt with together. The paramount complaint in respect to these instructions is that the use of such phrases as "this gentleman's unfortunate condition", "aggravated in a normal course", "by the treatment which he was given" and "in an accident" rendered the charge so vague and misleading as to be bad both in form and substance. The appellants further contend that the burden of proof and the degree of care owed Mr. Burns were not clearly stated to the jury. These contentions are not meritorious. In the first place it does not appear that the appellants entered seasonable and dis-

tinct objections to the language which they now assert injured them. Rule 51 of the Federal Rules of Civil Procedure requires such an objection as a condition precedent to assigning error on appeal in respect to the giving of any instruction. Williams v. National Surety Corp., 257 F.2d 771 (5th Cir. 1958). If the proper objection does not appear in the record, then the appellate court need not consider the alleged error. 9 Cyclopedia of Federal Procedure § 31.106 (3d ed. 1951). Even if the appellants had properly objected to the specified portions of the trial court's charge they could not prevail in the present appeal, since the charge, when read as a whole, gives "a full and comprehensive statement of the applicable law * * *." Lumbermens Mutual Casualty Co. v. Nolan, 331 F.2d 711, 712 (5th Cir. 1964). In respect to the trial court's use of the word "accident", it seems singularly inappropriate that the appellants should complain. A stipulation entered into by all counsel used the word "accidental" and counsel for appellants referred to "a simple accident" in his argument to the jury. Any confusion which arose from the use of the word "accident" was substantially contributed to by the appellants.

The appellants requested the following charge: "More weight should be given to affirmative testimony, where one witness, for instance, says that he saw something and another witness says that he did not see it, great weight should be given to the affirmative statement of the first." This requested charge was not given by the trial court and the appellants maintain that error was thereby committed. Three reasons exist which compel this court to reject appellants' contention. (1) The essence of the requested charge was substantially covered by the instructions which were given to the jury.[2] The language used by the trial court was not identical with that of the requested instruction but no reason appears why it should be. See Kayo Oil Co. v. Sammons, 321 F.2d 729 (5th Cir. 1963). It seems clear that Louisiana does adhere to a rule of law that "positive" testimony should be given more weight than "negative" testimony on the same point.[3] However, no case has come to the court's attention which requires that the jury be charged in the exact words used in the appellants' requested instruction. In fact, the rule itself has been criticized by Mr. Wigmore as being unsound.[4] The real question involved is

2. (a). Beginning on page 1125 of the transcript, the trial judge instructed the jury in respect to the question of credibility and weight. That instruction contained the following statement: "Even though a witness may be a party to the suit and may therefore be assumed to be vitally interested in its outcome, if his testimony be not contradicted by *direct* evidence * * * and and if such testimony be not opposed to the probability, or is in its nature surprising or suspicious, no reason exists for not according it due credibility."

(b). At page 1128 of the transcript the trial court stated: "In weighing the testimony of witnesses it is proper for you to consider those factors of human nature which either with or without any wrongful intention may have obstructed the giving of perfectly true testimony. Those factors are suggested by these questions: Did the witness

have full opportunity to learn the truth? If so, did he have the intelligence and purpose to ascertain the facts? What was the advantage or disadvantage of his point of observation?"

3. This rule is set out by statute in respect to Louisiana Criminal Law, La.Rev.Statutes 15:440 (1950), but it seems to have developed through case law as it is applied to civil actions. See, Von Eye v. Byrnes, 124 La. 769, 50 So. 708 (1909); Lusk v. United States F. & G. Co., 199 So. 666 (La.App.1941); Tolle v. Higgins Industries, 212 La. 173, 31 So.2d 730 (1947); Hutchinson v. Texas & N. O. R. Co., La.App., 33 So.2d 139 (1947); Franklin v. New Orleans Public Service, 187 So. 126 (1939).

4. "Nevertheless, from some source not traceable, there lingers in the judicial mind, in many quarters, an antiquated notion that *negative impressions are not so probative* as affirmative impressions; and a charge to the jury often embodies

one of weight and credibility,[5] which this court feels was adequately covered in the district court's instructions. (2) The appellants have categorically classified all of the appellees' testimony as "negative." This arbitrary classification is not justified. While the Louisiana courts recognize the rule discussed above, they seem to be very slow in deciding that certain testimony is "negative" in character. In Franklin v. New Orleans Public Service, supra, n. 5, the court had this to say: "We do not see that the testimony on behalf of defendant is negative merely because its witnesses *deny that something happened*." 187 So. 126, at 130. (Emphasis added). In the instant case some of appellees' witnesses testified that they did not see Mr. Burns dropped. Several of these witnesses were actually engaged in the changing of the bed linen at the time when Mr. Burns alleges he was dropped, and it would seem that their testimony is tantamount to a denial that he was dropped. Furthermore, at least three of appellees' witnesses testified unequivocally and positively that Mr. Burns was not dropped in any manner. Thus, the applicability of the rule to the facts of the present case is severely limited. See Cado v. Many, 180 So. 185 (1938); Greeves v. S. H. Kress & Co., 198 So. 171 (La.App.1940). (3) The third and final reason why the requested charge was properly rejected stems from an inherent weakness in the form of the charge itself. As requested, the charge was brief and to the point. Its brevity, however, spells defeat. The abstract proposition which the charge spelled out cannot be given alone. The request must also spell out the conditions upon which its application is proper, i. e., where the opportunity to observe was equal and the witnesses were of equal credibility. See, Greeves v. S. H. Kress & Co., 198 So. 171 (1940); Cf. Franklin v. Greyhound Corp., 64 So.2d 492 (La.App.1953). "A party cannot claim error in the refusal to give a requested instruction which is not entirely correct, *or which it is not possible to give without qualification,* or which is so framed as to be capable of being misunderstood." Cherry v. Stedman, 259 F.2d 774, 777–778 (8th Cir. 1958). (Emphasis added).

In their seventh assignment of error, the appellants contend that their motion for a new trial should have been granted since the verdict was "manifestly against the uncontradicted positive testimony." It is clear that "[a]n appellate court may reverse a district court for denial of a new trial based on the ground that the verdict was against the weight of the evidence only if the denial was 'an abuse of discretion'." Pruett v. Marshall, 283 F.2d 436, 438 (5th Cir. 1960). The record in the case at bar shows that there was ample evidence to support the jury's verdict and this court will look no further.

Appellants' final assignment of error complains that they were prejudiced by the district judge's "repeated" and "unwarranted" interruption of their closing argument. An examination of the record reveals that "repeated" actually means "twice" and that "unwarrant-

---

that notion, where the witnesses differ. The truth is that the conditions affecting correctness and fullness of observation are so numerous and varied that the one under consideration has a negligible or minor status. Modern psychology sneers at the law's crude assumption that the complexities of human perception can be handled by some rules of thumb about negative testimony or the like." 2 Wigmore, Evidence, § 664 [at p. 781] (3d ed. 1940).

"The rule is a discredit to the science of law, and should be discarded. The vain lucubrations to which it leads have no relation to the real probative value of specific testimony." 2 Wigmore, Op. Cit., supra, § 664 [at p. 782 n. 2] (3d ed. 1940). Cf. Cado v. Many, 180 So. 185 (La.App.1938).

5. See Franklin v. New Orleans Public Service, 187 So. 126 (La.App.1939), where the court, after discussing the proposition of affirmative and negative evidence *vis-à-vis*, stated that "[a]t any rate, the members of the jury, having seen and heard all of the witnesses, were better qualified * * * to decide just where credence should be placed."

ed" actually means "to clear up existing confusion which had been contributed to by the appellants." This was obviously well within the sound discretion of the trial judge.

On oral argument, the appellants raised several points which were not specified in their brief. In accordance with Rule 24 of this court, 28 U.S.C., p. 306 (Rules Volume 1956), these alleged errors are not considered. The judgment will be

Affirmed.